William M. Aron (SBN No. 234408)
**ARON LAW FIRM**
15 West Carrillo Street, Suite 217
Santa Barbara, CA 93101
Tel: (805) 618-1768
bill@aronlawfirm.com

*Attorneys for Plaintiff and the Class*

[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALIN POP, individually and on behalf of all those similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>BEACH BUNNY SWIMWEAR, INC., LADY AMELIA LABRADOR, ALEXANDRA ABBATE, ANABEL SANCHEZ, CELISA FRANCO, TIKA CAMAJ, and VLADA GLUKHOVA,<br><br>      Defendants. | Case No.:2:25-cv-4085<br><br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff, ALIN POP ("Plaintiff"), on behalf of himself and all those similarly situated, brings this Class Action Complaint against BEACH BUNNY SWIMWEAR, INC., LADY AMELIA LABRADOR, ALEXANDRA ABBATE, ANABEL SANCHEZ, CELISA FRANCO, TIKA CAMAJ, and VLADA GLUKHOVA, alleging as follows:

- 1 -

CLASS ACTION COMPLAINT

## INTRODUCTORY STATEMENT

1.    This is a nationwide class action seeking monetary damages, restitution, injunctive and declaratory relief from Defendants BEACH BUNNY SWIMWEAR, Inc. ("BBS") and so-called "influencers" illegally endorsing and promoting BBS products on social media: LADY AMELIA LABRADOR, ALEXANDRA ABBATE, ANABEL SANCHEZ, CELISA FRANCO, TIKA CAMAJ, and VLADA GLUKHOVA (together "Influencers").

2.    With millions of users all over the United States, in the last ten years social media became the place to be for consumer brands.  Due to mostly unregulated activity, it quickly grabbed the attention of those perpetrating "get rich quick" scams and other illegal behavior.

3.    This action is arising from the deceptive, unfair, and misleading promotion of BBS products in the state of Florida, California and throughout the United States via social media platforms including Instagram.

4.    During the Class Period (defined below), the Influencers misrepresented the material connection they have with BBS by promoting, endorsing, and recommending BBS products without disclosing the fact that they were compensated to do it, a practice that is highly unfair and deceptive.

5.    In order to artificially inflate the prices for the BBS products, both BBS and the Influencers devised a scheme in which the Influencers will endorse the BBS products, by tagging or recommending them while pretending they are disinterested consumers.

6.    While having large audiences, the Influencers involved are not known to a significant portion of the viewing public, with none of them having over 10 million followers.

7.    BBS products were sold mostly online, and most of their customers are social media users exposed to undisclosed advertising and endorsements.

8.    Relying on the undisclosed advertising and misleading endorsements, Plaintiff and the Class Members (defined below) purchased BBS products and paid a premium, while the BBS products purchased proved to be of a lower value than the price paid. Plaintiff filed this action to recover the difference between the price paid and the market value of the products as purchased.

CLASS ACTION COMPLAINT

**BEACH BUNNY SWIMWEAR**

9.     Angela Chittenden started BBS in Newport Beach, California, producing and selling a small variety of swimwear products.

10.     Following its increased popularity on social media, especially Instagram, and due to many Influencers endorsing BBS products, the brand expanded, and it is now producing everything from swimwear and coverups to clothing, lounge wear and accessories.

11.     The boom BBS experienced could not have been possible without the "sales power" provided by the Influencers that claimed that they love BBS:

 a.  "@beachbunnyswimwear ❤" writes Tika Camaj [1], on Instagram conveying her love message using emojis.

 b.  "Hot days be like @beachbunnyswimwear 🌸🧇🤍🤍🤍🐚" says Coral Vlada Glukhova[2] in an Instagram post.

12.     While it is now clear that the Influencers love the free gifts (and the compensation they receive for endorsing BBS), their followers are led to believe that they purchased the products and wear them because they love it. This is a textbook example of deceptive advertising.

13.     BBS started without brick-and-mortar stores in the US and historically relied on online sales, most of which are generated by the undisclosed advertising by the Influencers on social media.

14.     In recent years, BBS opened a number of stores in malls across the country, most of their visitors being drawn to the stores by the Influencers on social media.

15.     Other brands in the same market, like Victoria's Secret, are consistently offering either lower prices or better quality than BBS.  An analysis of identical products that were offered on both BBS and other swimwear brands shows that the prices on BBS website are usually 10-40% more than those of their competitors for the same quality products.

16.     While competitors like Victoria's Secret are also using influencer marketing, there is

---

[1] Post available at https://www.instagram.com/p/CZz96amuFVv/ (Accessed: 21 February 2025).
[2] Post available at https://www.instagram.com/p/Ch_n7l3v2QV/ (Accessed: 11 January 2025).

CLASS ACTION COMPLAINT

a stark difference in the way all these companies act on social media. Victoria's Secret, for example, is asking the influencers to properly disclose the material relationship with the brand by using the "Paid Partnership" label and the "#VSPartner" tag in order to comply with the FTC interpretation of the FTC Act.

17.    Various other BBS competitors on the swimwear market are also disclosing material relationship that they have with their social media influencers.



"Paid partnership"

"#VSPartner"

18.    On the other hand, BBS and the Influencers are omitting altogether any reference of the fact that the post is not the Influencer's honest opinion, but rather undisclosed advertising and paid endorsement, gaining an unfair market advantage and allowing BBS to charge more for its products.

19.    Out of the considerable profits derived by BBS from this scheme, part of the money is used to compensate the Influencers for their indispensable role.

**THE UNDISCLOSED ADVERTISING**

20.    While the practice employed by BBS and the Influencers is very profitable, it is, nevertheless, illegal. Federal law and California law prohibit such commercial behavior.

21.    Tags in social media posts, demonstrations, depictions of the name, signature, likeness or other identifying personal characteristics of an individual, and the name or seal of an organization can be endorsements. *See.* 16 C.F.R. § 255.

- 4 -

CLASS ACTION COMPLAINT

22. The Influencers are knowingly posting depictions of themselves wearing BBS, while mentioning the name of the brand and adding the brand's handle in their social media post (both on the caption and on the picture).

23. Plaintiff saw BBS products being worn or used by the Influencers he followed which led to him to purchasing BBS products, which proved to be of an inferior quality compared with the premiums they paid for the BBS products.

24. By looking at the posts, prior to making their purchases, Plaintiff was unable to discern the fact that those posts were paid posts, rather than organic, honest recommendations and endorsements by the Influencers.

25. But for the false endorsements by the Influencers and the misleading advertising claims, Plaintiff and the Class Members would not have purchased BBS products at the price they purchased them for.

26. In deciding to purchase BBS products, Plaintiff and the Class Members followed what they believed to be the honest advice of the Influencers. None of the posts Plaintiff saw mentioned, as required by the FTC Act and state law, that the Influencers are nothing more than paid advertisers, endorsing the brand.

27. In most of the posts Influencers will only tag BBS by including their handle, suggesting that this is their choice when it comes to swimwear. In other words, Influencers make it appear that they purchased BBS products as opposed to other products, because of the qualities of the product.

28. Sometimes the Influencers will specifically indicate that the BBS products are their favorite swimwear and express their unconditional love for the brand using words or emojis.

29. This undisclosed advertising and false endorsements have been present on Instagram in the last several years. Defendants have been advertising and endorsing BBS products on Instagram over the years, without mentioning even once that they are compensated (substantial amounts or merchandise) to advertise BBS and keep it quiet.

CLASS ACTION COMPLAINT

**NATURE OF THE ACTION**

30.     Plaintiff, Alin Pop, on behalf of himself and all those similarly situated Class Members seeks damages, declaratory judgment, permanent injunctive relief, disgorgement of ill-gotten monies, attorney's fees and costs, and other relief from Defendants for unjust enrichment, negligent misrepresentation, violations of the FTC Act, 15 U.S.C. § 45(a), and, therefore, violations of the state laws, violation of California Unfair Competition Law ("UCL"), violation of California False Advertising Law, violations of California's Consumers Legal Remedies Act ("CLRA").

**PARTIES**

31.     Plaintiff, Alin Pop ("Pop"), is a citizen of Florida who resides in Pinellas County IL and is otherwise *sui juris*. Pop purchased BBS products and paid a premium as a direct effect of undisclosed endorsements by Influencers.

32.     Plaintiff brings this action on his own behalf and on behalf of all other persons similarly situated class members (as defined below).

33.     Defendant BEACH BUNNY SWIMWEAR, Inc. ("BBS") is a company registered and headquartered in Orange County, California, doing business worldwide and in the United States, including in Florida and California. BBS owns the website https://www.beachbunnyswimwear.com, and the @beachbunnyswimwear Instagram account.

34.     Defendant Leidy Amelia Labrador, ("Labrador") is a citizen of Florida who resides in Miami-Dade County, FL, and is otherwise *sui juris*. Labrador is transacting business in Florida, California, and nationwide over the internet and actively soliciting business in Florida, California, and nationwide.



CLASS ACTION COMPLAINT

Source: https://www.instagram.com/leidy.amelia

35.    Defendant Alexandra Abbate, ("Abbate"), is a citizen of California who resides in Los Angeles County and is otherwise *sui juris*. Abate is transacting business in Florida, California, and nationwide over the internet and actively soliciting business in Florida, California, and nationwide.



Source: https://www.instagram.com/alexabbate/

36.    Defendant Anabel Sanchez ("Sanchez") is a citizen of California who resides in Los Angeles County, CA, and is otherwise *sui juris*. Sanchez is transacting business in Florida, California, and nationwide over the internet and actively soliciting business in Florida, California, and nationwide.



Source: https://www.instagram.com/anabelleworld/

CLASS ACTION COMPLAINT

37.    Defendant Celisa Franco ("Franco") is a citizen of California who resides in Los Angeles County, California and is otherwise *sui juris*. Franco is transacting business in Florida, California, and nationwide over the internet and actively soliciting business in Florida, California, and nationwide.



Source: https://www.instagram.com/cjfranco/

38.    Defendant Tika Camaj ("Camaj") is a citizen of California who resides in Los Angeles County and is otherwise *sui juris*. Camaj is transacting business in Florida, California, and nationwide over the internet and actively soliciting business in Florida, California, and nationwide.



Source: https://www.instagram.com/tikacamaj/

39.    Defendant Vlada Glukhova ("Glukhova") is a citizen of California who resides in Los

CLASS ACTION COMPLAINT

1 Angeles County and is otherwise *sui juris*. Glukhova is transacting business in Florida, California,

2 and nationwide over the internet and actively soliciting business in Florida, California, and

3 nationwide.



Source: https://www.instagram.com/hellogoldenvi/

## JURISDICTION AND VENUE

40.    This is a national class action, including every purchaser of BBS Products in the United States.

41.    BBS revenue is estimated at $19.4 million per year, a good part of which can be directly attributed to the undisclosed endorsements received on social media, therefore the estimated damages in this case are of at least US$ 5,000,000 for the entire class period.

42.    Collectively the Influencers have over 2,000,000 followers.

43.    The Nationwide Class, as defined below, is comprised of at least ten thousand people who purchased BBS products during the Class Period.

44.    This Court has jurisdiction over this matter under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a proposed class action in which: 1) there are at least 100 class members; 2) the combined claims of Class Members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and 3) Defendants and Class Members are citizens of different states.

45.    The Court also has jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's related

CLASS ACTION COMPLAINT

state law claims.

46.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(1). The BBS Defendants are headquartered in the Central District of California.

## STATEMENT OF FACTS

47.    Social media emerged in the last years as a main source of information and communication[3] for billions of users.

48.    There were an estimated 159 million Instagram users in the United States in 2022[4].

49.    In 2024 the platform engaged over 2.4 billion monthly users[5].

50.    In the last ten years, Instagram has become one of the most popular ways to influence consumer behavior on social media. Since 2017, Instagram has grown tremendously, adding 100 million users every few months[6]. Around seven-in-ten Americans ages 18 to 29 (71%) say they use Instagram.[7]

51.    Given the enormous reach of the social media platforms, and in an effort to curb online behavior that ignores the law and uses the lack of enforcement as an excuse for violating laws across jurisdiction, the FTC has published guidelines for influencers regarding proper advertising practices[8].

52.    Indeed, the rapid growth of social media platforms, including Instagram, allowed for a lack of regulation and oversight.  Some 80% of social media users said they were concerned about

---

[3] Fink, T., 2021. *Drivers of User Engagement in Influencer Branding*. [S.l.]: Springer Fachmedien Wiesbaden, p.2.

[4] Statista. 2021. *Leading countries based on Instagram audience size as of October 2021*: http://www.statista.com/statistics/578364/countries-with-most-instagram-users/ (last visited Oct 28, 2022).

[5] https://seo.ai/blog/how-many-users-on-instagram (last visited Mar 2, 2025).

[6] Farhad Manjoo, *Why Instagram Is Becoming Facebook's Next Facebook* The New York Times, April 26, 2017, https://www.nytimes.com/2017/04/26/technology/why-instagram-is-becoming-facebooks-next-facebook.html (last visited Oct 28, 2022).

[7] Schaeffer, K., 2022. *7 Facts About Americans and Instagram*. Pew Research Center. https://pewrsr.ch/3FqryHE (last visited Feb 11, 2022).

[8] Federal Trade Commission. 2019. *Disclosures 101 for Social Media Influencers*. Available at: https://www.ftc.gov/system/files/documents/plain-language/1001a-influencer-guide-508_1.pdf (last visited Oct 28, 2022).

- 10 -

CLASS ACTION COMPLAINT

advertisers and businesses accessing the data they share on social media platforms, and 64% said the government should do more to regulate advertisers[9].

53.    This is because some unscrupulous "influencers" are acting as advertisers for hire, making it a habit of posting fake reviews for sponsored products or failing to disclose the fact that they were paid to create the content displayed on their profile. More than often, these "influencers" would advertise everything from alcohol to cannabinoids, from political ideas to illegal giveaways, as long as they are paid the obscene amounts they are demanding.

54.    According to this business model, a number of carefully selected influencers will use products from BBS brands while pretending they purchased the products and present this fact to their followers, while being properly compensated, without disclosing any material relationship with any BBS entity.

55.    The marketing and sales strategy and the misleading claims above were developed by BBS in California and printed or otherwise distributed at the direction of its staff located in California. Also, BBS warrants, and oversees regulatory compliance and product distribution from California. Most of the Influencers are also based in California.

56.    Plaintiff and Class Members purchase such products at inflated prices, exclusively because of the way the BBS products are advertised on social media and the misleading content of the advertisement.

57.    Despite being compensated for endorsing and promoting BBS products, none of the Influencers use the "paid partnership" label suggested by the FTC or any other form of disclosure (#ad, #sponsored, #partner or a similar tag). A few influencers, at times, may use a buried small disclosure so it would be almost impossible for a social media user to discern the fact that the post was sponsored and the influencer was compensated for endorsing BBS.

---

[9] Raine, L., 2022. *Americans' complicated feelings about social media in an era of privacy concerns.* http://www.pewresearch.org/fact-tank/2018/03/27/americans-complicated-feelings-about-social-media-in-an-era-of-privacy-concerns/ (last visited Feb. 15, 2022).

CLASS ACTION COMPLAINT

58.     Therefore, the Influencers fail to be compliant with the FTC Act as interpreted by the FTC found in 16 C.F.R. § 255.5 and the FTC guidelines regarding advertising on social media.[10]

59.     Other influencers advertising BBS on social media without disclosing the material connection with the brand are: Emily Tanner, Fabiola Guajardo, Frida Aasen Chiabra, Jen Selter, Juliana Nalu, Natalia Barulich, Shannon DeLima, Chailee Son, Cindy Mello, and many more.

60.     In fact, many of the Influencers are familiar with the FTC guidelines and properly display the required disclosures when the brands are not willing to pay for them to disguise the advertising.



"Paid partnership

"#dossierpartner"

Source: https://www.instagram.com/alexabbate/

61.     Plaintiff is "following" all the Influencers on Instagram and was following them before he made the purchase. Plaintiff' decision to purchase BBS products and pay a premium for those products was determined by the Influencers he followed, specifically by the Defendants in this case and the fact that they promoted BBS products.

62.     Plaintiff Pop purchased two products from BBS for a total of $248.23 in June 2022 by placing an order online.



**beachbunnyswimwear**
**Delivered • Jun 8, 2022**
$248.23 (2 items)

---

[10] Federal Trade Commission (FTC), *supra* note

CLASS ACTION COMPLAINT

63.     Plaintiff would not have purchased the BBS products if he knew that the Influencers were paid to endorse BBS and that the Influencers' claims were unfair and misleading.

### THE ADVERTISING

64.     Meta, the parent company of Instagram, offers various products that advertisers can use for commercial use. For example, an advertiser may promote content using a *boosted post* or an *Instagram ad* for a price paid directly to Meta. Both the *post* and the *ad* are created by the advertiser that wants to promote a certain message, service, or product. They are clearly marked as advertising by Instagram.

65.     The same advertisers can also promote content by directly paying influencers to create a collaboration post. Influencers can also be paid for ads to be posted on the influencer's account, as part of the *grid* (the pictures and videos displayed for a user when accessing or refreshing an account) or as part of *stories* (short videos that only show for a limited amount of time and, usually, can only be viewed once). Such collaborations are usually properly disclosed.

66.     Another way Instagram allows advertisers to use the platform is by sponsoring independent content generated by the influencers themselves. In this case the influencer should take advantage of the "paid partnership" tag offered by Instagram to show that influencer is being compensated to generate this content. A "paid partnership" label is also a step in maintaining compliance with the Federal Trade Commission's ("FTC") rules and guidelines.

67.     Since, at times, Instagram algorithms may spot and remove posts where the "paid partnership" tag is not present, Influencers and BBS are going to great lengths to hide the nature of their partnership. Also, Instagram does not suggest paid posts to users that are not following the specific influencer.

68.     Every time an influencer advertises a product; such advertisement appears in the Instagram *feed* of social media users that are following the influencer.

69.     The FTC has repeatedly made public guidelines for influencers regarding proper advertising practices, publishing a plain language interpretation of the FTC Act.

70.     As recognized by the FTC, "[c]ompanies that use deceptive endorsements and reviews inflict an injurious double whammy. They harm consumers with misleading tactics that subvert their choices at check-out. And they take business away from honest competitors that work hard to comply with the law."[11]

71.     By advertising BBS products without regards to the disclosure requirements, the Influencers are in violation of 15 U.S.C. § 45(a) and therefore in violation of the "little FTC Acts" enacted in Florida and California.

72.     By instructing and allowing the influencers to advertise its products without making the proper disclosures, BBS is in violation of of 15 U.S.C. § 45(a) and therefore in violation of the "little FTC Acts" enacted in California and Illinois.

73.     Given the fact that BBS products are endorsed by many of the Influencers he followed, after seeing the undisclosed advertising, Plaintiff decided to purchase various BBS Products.

74.     Plaintiff and the Class Members purchased BBS products and paid an unjustified premium for them.

## CLASS ALLEGATIONS

75.     Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully re-written herein.

76.     Plaintiff assert the counts stated herein as class action claims pursuant to Rule 23.

77.     Plaintiff is filing this lawsuit on behalf of all persons that purchased BBS products relying on undisclosed paid endorsements on social media from May 7 2021, to present ("Class Period").

---

[11] Ritchie, J.N.& A. *et al.* (2023) *FTC and endorsements: Final revised guides, a proposed new rule, and an updated staff publication*, *FTC.gov*. Available at: https://www.ftc.gov/business-guidance/blog/2023/06/ftc-endorsements-final-revised-guides-proposed-new-rule-updated-staff-publication (Accessed: 07 September 2023).

CLASS ACTION COMPLAINT

78.     Plaintiff Pop is a citizen of Florida and seeks to represent two classes composed of and defined as follows:

Nationwide Class: All consumers that purchased BBS products in the United States.

Multi-State Subclass: All residents of the following states that purchased products from BBS during the class period: Colorado, Connecticut, Delaware, District of Columbia, Florida, Hawaii, Idaho, Illinois, Iowa, Kansas, Louisianna, Michigan, Minnesota, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, Oklahoma, South Carolina, Tennessee, Vermont, Washington, and Wisconsin. The consumer protection statutes of these states are materially identical with the statutes in Illinois and California. The respective statutes are: COLO. REV. STAT. § 6-1-102; CONN. GEN. STAT. § 42-110a; DEL. CODE ANN. tit. 6, § 2511; D.C. CODE ANN. § 28-3901; FLA. STAT § 501.204; HAW. REV. STAT. § 480-1; IDAHO CODE § 48-603; 815 ILL. COMP. STAT. 510/1 (2024); IOWA CODE § 714.16; KAN. STAT. ANN. § 50-623 (2024); LA. STAT. ANN. § 51:1401 (2024); MICH. COMP. LAWS § 445.903; MINN. STAT. § 325F.69; MONT. CODE ANN. § 30-14-101; NEB. REV. STAT. § 59-1601 (2024); NEV. REV. STAT. ANN. § 598.0903 (2024); N.H. REV. STAT. ANN. § 358-A:2 (2024); N.J. REV. STAT. § 56:8-2 (2024); N.M. STAT. ANN. § 57-12-2 (2024); N.Y. GEN. BUS. LAW § 349 (2024); OKLA. STAT. tit. 15, § 751 (2024); S.C. CODE ANN. § 39-5-10; TENN. CODE ANN. § 47-18-104 (2024); VT. STAT. ANN. tit. 9, § 2453 (2024); WASH. REV. CODE § 19.86.010 (2024); WIS. STAT. § 100.18 (2024).

79.     Collectively the members of the Nationwide Class and the Multi-State Subclass shall be referred to as "Class Members"

80.     The classes exclude counsel representing the class, governmental entities, Defendant, any entity in which Defendant has a controlling interest, Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other putative class members.

81.     Plaintiff reserves the right to amend or modify the class descriptions with greater

CLASS ACTION COMPLAINT

particularity or further division into subclasses or limited to particular issues.

82.      This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 ("Rule 23") because it is a well-defined community of interest in the litigation and the class is readily and easily ascertainable.

83.      <u>Numerosity</u>: At least one million consumers have been injured by Defendants' deceptive marketing practices, including the named Plaintiff.  At least one million consumers have purchased BBS products and paid a premium for it in reliance on the Defendants' representations.

84.      Each of the classes represented by the named Plaintiff has at least one thousand members and the joinder of all members is impracticable.

85.      <u>Typicality</u>: Plaintiff's story and his claims are typical for the class and, as the named Plaintiff is aware of other persons in the same situation. Plaintiff and the members of each class sustained damages arising out of Defendants' illegal course of business.

86.      <u>Commonality</u>: Since the whole class purchased BBS products and such products are promoted by the Defendants, the questions of law and fact are common to the class.

87.      <u>Adequacy</u>: Pop will fairly and adequately protect the interests of each class he represents.

88.      <u>Superiority</u>: As questions of law and fact that are common to class members predominate over any questions affecting only individual members, a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**VIOLATIONS OF 15 U.S.C. § 45(a)**
**(not pled as an independent cause of action)**

89.      By failing to disclose their material connection with the brand, the Influencers are in violation of 15 U.S.C. § 45(a).

90.      By failing to mandate and enforce disclosure of material connections with the Influencers, BBS is in violation of 15 U.S.C. § 45(a).

91.      The violations of the 15 U.S.C. § 45(a) are not pled as an independent cause of action, but as an element of one or more of the causes of action detailed in this Complaint.

CLASS ACTION COMPLAINT

**COUNT I: VIOLATION OF THE CONSUMERS LEGAL REMEDY ACT. CAL. CIV. CODE. §§ 1750, *ET SEQ*.**
(On behalf of Plaintiff Pop and the Nationwide Class)

92.     Plaintiff incorporates by reference paragraphs 1-91 of this Complaint as if fully re-written herein. Plaintiff asserts this count on their own behalf and on behalf of the Nationwide Class, as defined above, and pursuant to Rule 23.

93.     The conduct that forms the basis of this action arose in California, the state in which BBS has its headquarters and principal place of operations.

94.     Defendants developed, designed, and implemented policies and procedures at issue in this case in California.

95.     Defendants are each a "person" within the statutory meaning of Cal. Civ. Code § 176l(c).

96.     Defendants provided "goods" within the meaning of Cal. Civ. Code §§ 1761(a), 1770.

97.     Plaintiff and Class Members of the Nationwide Class are "consumers" within the meaning of Cal. Civ. Code §§ l76l(d), 1770 and have engaged in a "transaction" within the meaning of Cal. Civ. Code §§ 1761(e), 1770.

98.     As set forth herein, Defendants' acts and practices, undertaken in transactions violate §1770 of the Consumers Legal Remedies Act in that:

a.     Defendants misrepresented the source, sponsorship, approval, or certification of the goods or services.

b.     Defendants misrepresented the affiliation, connection, or association with, or certification by another.

c.     Defendants represented that the goods or services have approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; and

d.     Defendants advertised goods or services with intent not to sell them as advertised.

99.     Pursuant to the provision of Cal. Civ. Code §1780, Plaintiff seek an order enjoining

- 17 -

CLASS ACTION COMPLAINT

Defendants from the unlawful practices described herein, a declaration that Defendants' conduct violates the Consumers Legal Remedies Act, and attorneys' fees and costs of litigation.

## COUNT II: VIOLATIONS OF CALIFORNIA'S UNLAWFUL BUSINESS PRACTICES ACT, CAL. BUS. & PROF. CODE § 17200. *ET. SEQ*
(On behalf of Plaintiff Pop and the Nationwide Class)

100.    Plaintiff incorporates by reference paragraphs 1-91 of this Complaint as if fully re-written herein. Plaintiff asserts this count on their own behalf and on behalf of the Nationwide Class, as defined above, and pursuant to Fed. R. Civ. Pro. 23.

101.    The conduct that forms the basis of this action arose in California, the state in which BBS has its headquarters and principal place of operations. Defendants developed, designed, and implemented policies and procedures at issue in this case in California.

### Unfair And Fraudulent Competition

102.    Defendants have engaged in unfair competition within the meaning of Cal. Bus. & Prof. Code §§17200, et seq., because Defendants' conduct is unlawful, unfair, and/or fraudulent, as herein alleged.

103.    Plaintiff, the class members, and Defendants are each a "person" or "persons" within the meaning of § 17201 of the California Unfair Competition Law ("UCL").

104.    Defendants promoted and advertised BBS products without properly disclosing their financial interest and such acts and practices constitute deceptive acts or practices in violation of Section 5(a) of 15 U.S.C. § 45(a).

105.    A violation of Section 5(a) of 15 U.S.C. § 45(a) represents a *per se* violation of the California Unfair Competition Law ("UCL").

106.    In the alternative, failure to disclose paid sponsorships and endorsements represents conduct that violates California Unfair Competition Law ("UCL").

### Unlawful Competition

107.    The UCL is, by its express terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes and/or

- 18 -

common law remedies.  Plaintiff hereby incorporate by reference all prior causes of action into this cause of action.

### Violations of Advertising Law

108.    By making statements that are not true and statements that are misleading, Defendants are in violation of California False Advertising Law, Cal. Civ. Code. §§ 17500, *ET SEQ*.

109.    "'[A]ny violation of the false advertising law . . . necessarily violates the UCL.'" (*Kasky, supra*, 27 Cal.4th at p. 950.)  Section 17500 "proscribe[s] '"not only advertising which is false, but also advertising which [,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."'    [Citation.]"    (*Colgan v. Leatherman Tool Group, Inc*. (2006) 135 Cal.App.4th 663, 679.)

110.    Plaintiff and the Nationwide Class Members request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and Class Members any monies Defendants acquired by unfair competition, including restitution and/or equitable relief, including disgorgement or ill-gotten gains, refunds of monies, interest, reasonable attorneys' fees, and the costs of prosecuting this class action, as well as any and all other relief that may be available at law or equity.

111.    Plaintiff and Class Members seek attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

### COUNT III: UNJUST ENRICHMENT UNDER CALIFORNIA LAW
(On behalf of Plaintiff Pop and the Nationwide Class)

112.    Plaintiff incorporates by reference paragraphs 1-91 of this Complaint as if fully rewritten herein. As set forth above, Plaintiff assert this count on their own behalf and on behalf of all other similarly situated Instagram users.

113.    By paying the high prices demanded by BBS, Plaintiff and Class Members conferred a direct benefit to all the Defendants.

114.    Instagram users that are members of the class continue to suffer injuries as a result of the Defendants' behavior. If the Defendants do not compensate Plaintiff and class members, they

- 19 -

1    would be unjustly enriched as a result of their unlawful act or practices.

2        115.    It is an equitable principle that no one should be allowed to profit from his own wrong,

3    therefore it would be inequitable for the Defendants to retain said benefit, reap unjust enrichment.

4        116.    Under California law, one person should not be permitted to unjustly enrich himself

5    at the expense of another and should be required to make restitution of or for property or benefits

6    received, retained, or appropriated, where it is just and equitable that such restitution is made.

7        117.    Since the Defendants unjustly enriched themselves at the expense of the Instagram

8    users, members of the Nationwide Class, Plaintiff requests the disgorgement of these ill-gotten

9    money.

10       118.    Due to Defendants' conduct, Plaintiff and the Class Members are entitled to damages

11   according to proof.

12                **COUNT IV: VIOLATIONS OF CONSUMER PROTECTION LAWS OF VARIOUS**
                                          **STATES**
13                        (On behalf of Plaintiff Pop, and the Multi-State Class)

14       119.    Plaintiff incorporates by reference paragraphs 1-91 of this Complaint as if fully re-

15   written herein. Plaintiff asserts this count on her own behalf and on behalf of the Pennsylvania

16   Subclass, as defined above.

17       120.    As discussed *supra*, by failing to disclose material connections, Defendants violated

18   15 U.S.C. § 45(a) ("FTC Act") as interpreted by the FTC and the courts, which represents a violation

19   of the little FTC Acts of the states included in the Multi-State Class.

20       121.    The consumer protection statutes enacted in the states included in the Multi-State Class

21   are materially identical to ICFA and UCL.

22       122.    As such, the members of the Multi-State Class are entitled to damages as calculated

23   by each consumer protection statute in the state where they reside.

24                        **COUNT V: NEGLIGENT MISREPRESENTATION**
25                        (On behalf of Plaintiff Pop and the Nationwide Class)

26       123.    Plaintiff incorporates by reference all paragraphs 1-91 of this Complaint as if fully

27   rewritten herein. As set forth above, Plaintiff assert this count on their own behalf and on behalf of

28
CLASS ACTION COMPLAINT

1  all other similarly situated persons pursuant to Rule 23.

2      124.    Defendants had a duty to be truthful in their commercial speech.

3      125.    In convincing Plaintiff to purchase BBS products, Defendants made representations

4  and endorsements that they knew to be false or negligently failed to examine the veracity of the

5  affirmations.

6      126.    As a result of the Defendants' negligent misrepresentations, Plaintiff and the

7  Nationwide Class Members suffered injury.

8                          **DEMAND FOR JURY TRIAL**

9      127.    Plaintiff and those similarly situated Class Members demand a trial by jury for all

10  issues so triable.

11                          **PRAYER FOR RELIEF**

12      WHEREFORE, Plaintiff, Alin Pop, respectfully request that judgment be entered in his favor

13  and in favor of the Class Members as follows:

14      a.    Certifying and maintaining this action as a class action, with the named Plaintiff as

15  designated class representatives and with their counsel appointed as class counsel;

16      b.    Declaring the Defendants in violation of each of the counts set forth above;

17      c.    Awarding Plaintiff and those similarly situated compensatory, punitive, and treble

18  damages in excess of $5,000,000;

19      d.    Awarding Plaintiff and those similarly situated liquidated damages;

20      e.    Order the disgorgement of ill-gotten monies;

21      f.    Awarding the named Plaintiff a service award;

22      g.    Awarding pre-judgment, post-judgment, and statutory interest;

23      h.    Awarding attorneys' fees and costs;

24      i.    Awarding such other and further relief as the Court may deem just and proper.

25

26  Dated: May 15, 2025

27
                                                    - 21 -
28  CLASS ACTION COMPLAINT

Respectfully Submitted,


s/Bogdan Enica
Bogdan, Enica, Esq. (Pro Hac Vice Application to be filed)
**KEITH GIBSON LAW P.C.**
1200 N Federal Hwy., Ste.375
Boca Raton FL 33432
Telephone: (305) 306-4989
Email:Bogdan@KeithGibsonLaw.com

**Keith L. Gibson, Esq.** (Pro Hac Vice Application to be filed)
**KEITH GIBSON LAW P.C.**
586 Duane Street, Suite 102
Glen Ellyn IL 60137
Telephone: (630) 677-6745
Email: Keith@KeithGibsonLaw.com

William M. Aron (SBN No. 234408)
**ARON LAW FIRM**
15 West Carrillo Street, Suite 217
Santa Barbara, CA 93101
Tel: (805) 618-1768
bill@aronlawfirm.com

*Attorneys for Plaintiff and the Putative Class Members*

- 22 -

CLASS ACTION COMPLAINT